Leon E. BARD, Jr.

v.

BATH IRON WORKS CORP.

Supreme Judicial Court of Maine.

Argued March 7, 1991.
Decided April 26, 1991.

Elliott L. Epstein (orally), Isaacson & Raymond, Lewiston, for appellant.

Constance P. O'Neil, Arlyn H. Weeks (orally), Conley, Haley, O'Neil & Kaplan, Bath, for appellee.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, COLLINS and BRODY, JJ.

BRODY, Justice.

Leon E. Bard, Jr., appeals from a final judgment entered in the Superior Court (Kennebec County) on his complaint alleging retaliatory discharge in violation of the Whistleblowers' Protection Act, breach of employment contract, wrongful discharge, and breach of implied covenant of good faith and fair dealing. Bard contends that the court (*Silsby, J.*) erred in granting a motion for judgment made by Bath Iron Works Corporation (BIW) after the close of his evidence on the whistleblower claim. He also contends that the court (*Alexander, J.*) earlier erred in granting BIW's motion for summary judgment on his other three claims as well as its motion to strike the whistleblower claim from the jury trial list. We find no error and affirm the judgment.

Bard was employed by BIW from 1979 to 1986. In 1983, he became an inspector in the quality assurance department with responsibility for inspecting shipping documents and test reports accompanying incoming steel purchased by BIW from various steel mills. In the course of his inspection job, Bard discovered what he believed to be flaws in BIW's quality assurance process. He feared that these practices were contrary to provisions in BIW's contracts with the United States Navy. Beginning in 1984, Bard on several occasions called the suspected problem to the attention of his supervisors as well as Navy inspectors on site at BIW.

Bard received his last salary increase in January of 1984. Evaluations of his job performance by his supervisors, although generally good at first, became increasingly critical of his attitude and ability to work with others as a result of numerous complaints that his supervisors received about his performance. Bard was counseled about his attitude and performance on more than one occasion and was given a written warning in January of 1986. Eventually, other BIW employees had to be assigned to help him get his work done. Finally, on September 12, 1986, BIW discharged Bard for deliberately restricting output and creating a nuisance.

In response to his termination, Bard filed a complaint against BIW alleging breach of employment contract and reprisal in violation of the Whistleblowers' Protection Act. The complaint was subsequently amended to add the additional counts of wrongful discharge and breach of implied covenant of good faith and fair dealing. On May 4, 1989, the court granted BIW's motion for summary judgment on all counts but the whistleblower count. Shortly afterward, the court granted BIW's motion to strike Bard's whistleblower claim from the jury trial list on the ground that the Legislature had amended the Whistleblowers' Protection Act to eliminate the statutory right to a jury trial. Bard's appeal to this court was dismissed because the order appealed from was not a final judgment. *Bard v. Bath Iron Works Corp.*, 568 A.2d 1108 (Me.1990). The case was then tried without a jury on June 6–11, 1990. At the close of Bard's evidence, BIW successfully moved for judgment pursuant to M.R. Civ.P. 50(d).

I.

On appeal, Bard first challenges the judgment in favor of BIW on his claim for retaliatory discharge in violation of the Whistleblowers' Protection Act, 26 M.R.S.A. §§ 831–840 (1988). The statute prohibits an employer from, among other things, terminating an employee for reporting illegal activities. The relevant section of the Act provides in pertinent part:

**1. Discrimination prohibited.** No employer may discharge, threaten or otherwise discriminate against an employee regarding the employee's compensation,

terms, conditions, location or privileges of employment because:

 **A.** The employee, acting in good faith, or a person acting on behalf of the employee, reports orally or in writing to the employer or a public body what the *employee has reasonable cause to believe is a violation of a law or rule* adopted under the laws of this State, a political subdivision of this State or the United States....

26 M.R.S.A. § 833(1)(A) (1988) (emphasis added).

Bard challenges the court's conclusion of law that he presented no evidence showing that he had reasonable cause to believe that a law or rule had been violated. He contends that BIW's alleged violation of MIL–Q–9858, a standard clause in its contract with the Navy, was also a violation of a specific federal regulation dealing with government procurement contracts. He contends alternatively that, in order to come under the protection of the Act, he need only have had a good faith belief that BIW had violated some law or rule. We are not persuaded by either argument.

By ruling as it did, the trial court in effect concluded that the evidence presented in Bard's case in chief was insufficient to establish a prima facie case of retaliatory discharge in violation of the Act. In general, a prima facie case of reprisal for whistleblowing requires that the employee show that (1) he engaged in activity protected by the statute, (2) he was the subject of adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action. *See Moon v. Transport Drivers, Inc.,* 836 F.2d 226, 229 (6th Cir.1987). The court essentially concluded that the evidence was legally insufficient to show that Bard had engaged in activity protected by the Whistleblowers' Protection Act.

█ Because the court ruled solely on the legal sufficiency of the evidence even though it could have determined the facts, its order of judgment pursuant to M.R. Civ.P. 50(d) was equivalent to the direction of a verdict pursuant to Rule 50(a) in a jury trial. *See Department of Human Servs.*

*v. Earle,* 481 A.2d 175, 179 (Me.1984). In reviewing a directed verdict, we consider the evidence and every justifiable inference from the evidence in the light most favorable to the party against whom the verdict was directed. *Baker v. Mid Maine Medical Center,* 499 A.2d 464, 466 (Me.1985). The granting of a directed verdict is improper only if by any reasonable view of the evidence a contrary verdict could be sustained. *Id.* It follows, therefore, that a plaintiff must establish a prima facie case of the elements of the action in order to avoid a directed verdict. *Inniss v. Methot Buick–Opel, Inc.,* 506 A.2d 212, 215 (Me. 1986).

█ The record supports the court's order of judgment for BIW. Although Bard contends on appeal that BIW's alleged violation of MIL–Q–9858 was also a violation of a federal regulation, he concedes that he did not present evidence to that effect at trial. Because the issue was not raised in the trial court, it is deemed waived for purposes of this appeal. *See Poire v. Manchester,* 506 A.2d 1160, 1163–64 (Me.1986).

More to the point, Bard presented no evidence to show a belief on his part, as required by the Whistleblowers' Protection Act, that BIW was in any way acting illegally. In fact, his testimony at trial established no more than that he believed that a violation of *contract* provisions might have occurred. "I was afraid that [BIW's practices] would be in nonconformance with Navy contracts and lose contracts with the Navy," he testified. "[BIW]'s one of the largest employers in the state and it would be a shame to lose work." Bard never testified or presented any other evidence to show that he had "reasonable cause to believe" that BIW had violated any "law or rule adopted under the laws of this State, a political subdivision of this State or the United States."

In this regard, Bard's reliance on *Melchi v. Burns Int'l Sec. Servs., Inc.,* 597 F.Supp. 575 (E.D.Mich.1984) (construing Michigan whistleblower statute), in support of his argument that he need only have had a good faith belief that BIW had violated some law or rule, is misplaced. First, the

Maine Whistleblowers' Protection Act, unlike its Michigan counterpart, also requires an employee to prove that a reasonable person might have believed that the employer was acting unlawfully. Second, Bard introduced no evidence to show that he even subjectively believed that BIW had violated a law or rule as opposed to a mere contract provision.

In view of Bard's failure to establish a prima facie case of reprisal for whistleblowing by failing to show preliminarily that he had engaged in activity protected by the Whistleblowers' Protection Act, the court properly granted BIW's motion for judgment.

## II.

Bard next argues that the court erred in granting BIW's motion for summary judgment on his claim for breach of employment contract. While he concedes that his employment at BIW was of indefinite duration, he contends that a pamphlet entitled "Rules and Regulations" given him when he began working for BIW in 1979 created an implied employment contract by which he could be discharged only for a violation of one of those rules or regulations. He contends, therefore, that the existence of genuine issues of material fact precluded a summary judgment for BIW on this count of his amended complaint. We disagree.

■ With one narrow exception, an employment contract of indefinite duration may be terminated at will by either party. *Terrio v. Millinocket Community Hosp.*, 379 A.2d 135, 137 (Me.1977). The one exception is that parties to an employment contract of indefinite duration "may enter into an employment contract terminable only pursuant to its *express* terms—as 'for cause'—by *clearly stating their intention to do so.*" *Larrabee v. Penobscot Frozen Foods, Inc.*, 486 A.2d 97, 99–100 (Me.1984) (emphasis added). Such a contract must expressly restrict the employer's common law right to discharge the employee at will and clearly limit the employer to the enumerated method or methods of terminating the employment. *Libby v. Calais Regional Hosp.*, 554 A.2d 1181, 1183 (Me.1989).

"Written or oral *language merely implying that discharge is for cause only is not sufficient to* bind an employer." *Id.* (emphasis added).

■ Contrary to Bard's contentions, the record contains no evidence of any intention, much less the requisite clear statement of intention, that BIW would discharge him only for cause. The record reveals, rather, that Bard's allegations of breach of employment contract are based not on any oral or written representations made to him by BIW but on no more than his own private assumptions. Because resolution of the dispute between the parties was solely dependent on established principles of law, *see Tisei v. Town of Ogunquit*, 491 A.2d 564, 568 (Me.1985), the court did not err in granting BIW's motion for summary judgment on Bard's claim for breach of employment contract.

Nevertheless, Bard urges this court to overrule *Libby* or, alternatively, to limit its applicability to cases in which the employer has expressly disclaimed the creation of an employment contract in the context of an employee handbook or similar device. Under *Libby*, he contends, no matter how many rules and regulations the employer promulgates in regard to employee conduct, the employee remains *unprotected* from discharge for "any or no reason at all." This argument is unpersuasive. Even if we were inclined to overrule or limit *Libby*, we would decline to do so on this record.

## III.

■ Bard also argues that the court erred in granting BIW's motion for summary judgment on his claim for wrongful discharge. He contends that both the language of the Whistleblowers' Protection Act and the policy concerns underlying it require us to recognize the tort of wrongful discharge and vacate the court's judgment on this count of his amended complaint. He further contends that we must recognize the tort of wrongful discharge because the Act does not adequately protect employees who report violations of

federal as opposed to state law. Again, we disagree.

Bard's reliance for his position on the language of the Act is misplaced. Although section 840 provides that "[n]othing in this section may be construed to derogate any common-law rights of an employee," 26 M.R.S.A. § 840 (1988), Bard apparently ignores the fact that this court has yet to recognize a common law cause of action for wrongful discharge. *See, e.g., Pooler v. Maine Coal Prods.,* 532 A.2d 1026, 1027 (Me.1987); *Larrabee v. Penobscot Frozen Foods, Inc.,* 486 A.2d at 100. The statute cannot preserve what does not exist. Moreover, where a statutory right and remedy are provided, there is no need to recognize a redundant tort. *Greene v. Union Mut. Life Ins. Co.,* 623 F.Supp. 295, 299 (D.Me.1985). The Whistleblowers' Protection Act embodies a statutory public policy against discharge in retaliation for reporting illegal acts, a right to the discharged employee, and a remedial scheme to vindicate that right.

■ Finally, Bard's assertion that the Act does not provide adequate protection for employees reporting violations of federal law is inaccurate. If a Maine employee reports a suspected violation of federal law to his employer in compliance with the Act, he is protected by the Act. 26 M.R.S.A. § 833(1)(A). In fact, the employee must bring the alleged violation to the attention of his employer first in order to come under the Act's protection unless the employee has specific reason to believe that reports to the employer will not result in correction of the violation. *Id.* § 833(2). The fact that the term "public body" as used in the statute does not encompass federal agencies, *id.* § 832(4), is of no import where, as here, the employee reported the alleged violation to his employer first.

### IV.

■ Bard further argues that the court erred in granting BIW's motion for summary judgment on his claim for breach of implied covenant of good faith and fair dealing. He urges us to recognize this cause of action in the context of an employment contract where a violation of public policy is involved. We decline his invitation. As noted above, we have consistently refused to recognize implied promises in employment contracts of indefinite duration. *See Larrabee v. Penobscot Frozen Foods, Inc.,* 486 A.2d at 99; *Libby v. Calais Regional Hosp.,* 554 A.2d at 1183. Furthermore, although a few jurisdictions have been willing to imply covenants of good faith and fair dealing in such contracts, they have done so on grounds not present here.

In Massachusetts, for example, an employer breaches an implied covenant of good faith and fair dealing only when it terminates an employee in order to deprive him of compensation already due for past services, *Fortune v. National Cash Register Co.,* 373 Mass. 96, 104–105, 364 N.E.2d 1251, 1255 (1977), or in violation of a public policy clearly enunciated by statute but for which no civil remedy is available. *McKinney v. National Dairy Council,* 491 F.Supp. 1108, 1118–22 (D.Mass. 1980). Absent such grounds, an employer can discharge an employee-at-will without reason and even negligently and in bad faith. *Demars v. General Dynamics Corp.,* 779 F.2d 95, 100–101 (1st Cir.1985).

### V.

Bard finally argues that the court erred in denying him a jury trial on his whistleblower claim after summary judgment was entered against him on the three other counts of his amended complaint. He contends that he was entitled to a trial by jury because section 840 of the Whistleblowers' Protection Act, which expressly allowed such claims to be tried to a jury, was not repealed and replaced until after he had filed his complaint. *See* 26 M.R.S.A. § 840 (Pamph.1985), *repealed by* P.L. 1987, ch. 782, § 9. We need not and do not decide whether Bard had a right to a jury trial on his whistleblower claim. Even if he had

such a right, his claim would not have survived a motion by BIW for a directed verdict since the evidence presented in his case in chief was legally insufficient to establish a prima facie case of retaliatory discharge under the Act. *See Inniss v. Methot Buick–Opel, Inc.,* 506 A.2d at 215.

The entry is:

Judgment affirmed.

All concurring.