Kaiwi **KELII**, Plaintiff,

v.

**PORTLAND SCHOOL DEPARTMENT,**
Defendant.

No. Civ. 95–382–P–C.

United States District Court,
D. Maine.

Nov. 24, 1997.

Stephen J. Sucy, Yarmouth, ME, Nicholas Kaldro, Kaldro & Martell, Portland, ME, for Plaintiff.

Melissa A. Hewey, Daniel J. Rose, Drummond, Woodsum, Plimpton & Macmahon, Portland, ME, for Defendant.

**MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MAINE WHISTLEBLOWERS' PROTECTION ACT CLAIM**

GENE CARTER, District Judge.

Plaintiff Kaiwi Kelii's Amended Complaint alleges claims for racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and 42 U.S.C. § 1981 (Count I); Maine Whistleblowers' Protection Act, 26 M.R.S.A. §§ 831 *et seq.* (Count II); and intentional infliction of

emotional distress (Count III). Prior to trial, the Court reserved for its decision post-trial the question of whether Defendant Portland School Department ("School Department") violated Plaintiff's rights under the Maine Whistleblowers' Protection Act. After a three-day trial, the jury returned a verdict for Defendant on Counts I and III. The Court now has before it Plaintiff's claim for recovery under the Maine Whistleblowers' Protection Act and Defendant Portland School Department's Motion, made at the end of Plaintiff's case and renewed at the conclusion of all of the evidence at trial, for Judgment as a Matter of Law on Plaintiff's whistleblower claim. The Court will deny Plaintiff's recovery on Count II. and grant Defendant's Motion for Judgment as a Matter of Law on that count. The Court will direct the entry of judgment in favor of the School Department on Plaintiff's Maine Whistleblowers' Protection Act claim.

## I. FACTS

On August 20, 1990, Mr. Kelii filled out an application form for a custodial position with the Portland School Department. The Portland School Department hired Mr. Kelii in October 1990. Mr. Kelii was first assigned to work as a custodian at Lincoln Middle School and later at Deering High School. On March 19, 1993, after a particularly heavy snow storm, the custodial staff at Deering High School was asked to shovel snow off the roof of the school. Mr. Kelii voiced concern about safety conditions on the roof. Custodial supervisor Roger Kelley was notified of the situation, and the staff was removed from the roof. Mr. Kelley testified that he telephoned the School Department's independent safety consultant, Debbie Roy, and was informed by her that, according to the Maine Department of Labor, there were no safety requirements for shoveling snow in emergency situations. Nevertheless, Mr. Kelley arranged to have safety cones and tape purchased, and he went to Deering High School to assess the situation himself. At Deering High School, Mr. Kelley met with Mr. Kelii and encouraged him to call the Maine Bureau of Labor Standards to assure that the School

Department was following proper guidelines. After a call was made, the safety cones and tape were placed near the edge of the roof in order to form a boundary, and then the custodial staff resumed shoveling snow off the roof.

After the snow shoveling incident, problems between Mr. Kelii and his custodial supervisor at Deering High School, Ray Wakefield, developed. The problems Mr. Kelii referred to at trial were: (1) removal of the custodians' "second break;" (2) removal of his beeper; and (3) the passing around of a petition complaining about Mr. Kelii's effect on the morale of the custodial staff at Deering High School. On March 29, 1993, Mr. Kelii interviewed for a day-shift position, but he was not given the job.

In April 1993, Mr. Kelii filed his first complaint with the Maine Human Rights Commission ("MHRC") in which he alleged that the School Department discriminated against him as a result of various incidents including his union activities and his reporting of safety violations to OSHA. Mr. Kelii claimed that the discrimination caused him not to be selected for a day job and, in general, to be treated less favorably. In May, Mr. Kelii was transferred to another school. On June 7, 1993, Mr. Kelii was transferred back to Deering High School, and the custodians' second break was restored. At the end of June, Mr. Kelii alleges, Mr. Wakefield called him a "pineapple," apparently referring to his Hawaiian ancestry. In August 1993, Mr. Kelii amended his MHRC complaint to include additional instances of retaliation and racial discrimination. Plaintiff's Ex. 12.

Another safety issue arose in August 1993, when Mr. Kelii was required to move insulation without appropriate protective gear. Mr. Kelii testified that as a result of this incident, he made a complaint to the Maine Bureau of Labor Standards in September 1993. Based on an inspection of Deering High School on October 20, 1993, a citation was issued to the School Department by the Bureau of Labor Standards for failure to have employees use protective equipment when installing fiberglass insulation.[1] Plain-

---

1. There was no direct evidence introduced at

trial to connect the citation with Mr. Kelii's Sep-

tiff's Ex. 7. In addition, Joline Hart, Personnel Director for the Portland School Department, conducted an investigation, in October and November 1993, into the allegations that Mr. Wakefield called Mr. Kelii a "pineapple." As a result of her investigation, Ms. Hart concluded that there was no discrimination and, therefore, Mr. Wakefield did not receive a reprimand regarding the incident.

On November 3, 1993, Mr. Kelii did not come to work, stating he was unable to do so because of stress. On November 4, 1993, Mr. Kelii again did not report to work, but he did attend a previously scheduled meeting with Ms. Hart, Richard Jones, Facilities Manager for the Portland School Department, and Ray Wakefield at Deering High School. The purpose of the meeting, Ms. Hart explained, was to try to repair the relationship between Mr. Kelii and Mr. Wakefield so that they could work productively together. At that meeting, Mr. Kelii was told that there was no position available for him to transfer to within the school district.

On November 5, 1993, Mr. Kelii went to Maine Medical Center for a psychiatric evaluation. Mr. Kelii still had not returned to work on November 9, prompting his supervisor, Mr. Jones, to write him a letter requesting a note from a doctor explaining the medical reason for Mr. Kelii's recent absences. Defendant's Ex. 15. After receiving this letter, Mr. Kelii went to the Maine Medical Center emergency room to get a doctor's note. The document Mr. Kelii received from the emergency room, and later sent to the School Department, stated: "Continue with outpatient therapist. If needs medication evaluation call 871–2221." Joint Ex. 6. Mr. Jones wrote a memorandum to Joline Hart dated November 11, 1993, in which he recommended that Mr. Kelii be terminated "for insubordination as described in a memo from Ray Wakefield ... dated 11/2/93." Plaintiff's Ex. 14. Part of the stated basis for his recommendation was the time it took to deal

with the various administrative complaints made by Mr. Kelii. *Id.*

On November 15, 1993, Plaintiff went back to Maine Medical Center to make an appointment for a psychiatric evaluation. The note he obtained at that time, and subsequently gave to the school Department, was written by Richard Chandler, M.D. The note included the following evaluation:

> My evaluation tonight [and] that of Greg Adams psychiatric social worker. (11/5/93) suggests a diagnosis of anxiety [with] superimposed depressive features. A psychiatric evaluation is needed to assess ability to return to work [and] patient[']s need for medication.

Joint Ex. 7. Dr. Chandler added that "it is difficult to get a timely psychiatric evaluation in the Portland area." Id.

After receiving Dr. Chandler's note from Mr. Kelii, Ms. Hart scheduled a psychological examination for Mr. Kelii. A letter, dated November 29, 1993, notified Mr. Kelii that the School Department required him to obtain an "independent psychological evaluation by James Moran" before he could return to his job. Defendant's Ex. 16. The letter stated that he could chose between two dates, December 17 and December 21, which the School Department had scheduled for the evaluation. *Id.*

On December 2, 1993, Mr. Kelii was admitted as a patient to the psychiatric floor at Maine Medical Center. Records from that admission state that Mr. Kelii was having serious problems including "auditory hallucinations" and "homicidal ideation" directed at his supervisors. Joint Ex. 8. After Mr. Kelii was discharged from Maine Medical Center, he had two telephone conversations with Ms. Hart. In the first conversation, Ms. Hart told Mr. Kelii that he needed to be seen for a psychological evaluation before he could be permitted to return to work. Mr. Kelii asked if Ms. Hart could talk to his doctor rather than his submitting to an independent psychological examination. Mr. Kelii testi-

---

tember complaint about the failure to use protective clothing in August; nevertheless, the Court is persuaded by the timing that the citation was meant to address the situation with Mr. Kelii. The citation was addressed to the Superintendent of the Portland Schools and there was no evidence as to whether any of Mr. Kelii's direct supervisors, Mr. Kelley, or Mr. Jones were aware that the citation had been issued. Plaintiff's Ex. 7.

fied that at that time, he was under the care of a psychiatrist and that he thought he had provided Ms. Hart with a medical release permitting her to get information from his psychiatrist. Ms. Hart told Mr. Kelii that she would agree to talk to his doctor and would make the determination regarding the independent examination after discussing Mr. Kelii's fitness to return to work with his doctor. Mr. Kelii promised to have his doctor telephone Ms. Hart. Mr. Kelii's doctor never called Ms. Hart, and Mr. Kelii failed to attend either of the scheduled evaluations. Accordingly, on January 10, 1994, Ms. Hart notified Mr. Kelii that because she had not heard from his doctor and he had not attended the scheduled evaluations with Dr. Moran, she had made additional arrangements for Mr. Kelii to be evaluated by Dr. Moran on January 26, 1994. Defendant's Ex. 19.[2]

The other telephone conversation with Ms. Hart took place later in December, at which time Mr. Kelii requested permission from Ms. Hart to return to work. At the end of December, after being told he could not return to work without being evaluated by Dr. Moran, Mr. Kelii filed for unemployment compensation. Joint Ex. 10. The unemployment compensation paperwork described Mr.

Kelii's condition as "anxiety disorder—severe" and recommended that he could perform "almost any kind" of work "just not at previous job." Joint Ex. 10.

On January 19, 1994, Ms. Hart wrote Mr. Kelii another letter, this one concerning a criminal conviction for assault which he had failed to disclose on his employment application with the School Department. Defendant's Ex. 20. Ms. Hart invited Mr. Kelii to explain the discrepancy at a meeting on January 24, 1994. Id. At that meeting, Mr. Kelii gave conflicting explanations about the assault conviction: he said it was in self-defense and he also said he did not realize that he had pled guilty. Thereafter, Mr. Kelii did not go to the scheduled psychiatric appointment on January 26, 1994.

On January 31, 1994, Ms. Hart and Mr. Jones made the decision to terminate Mr. Kelii because he failed to attend any of the scheduled psychological examinations, leaving the School Department without any of the requested medical information, and because he falsified his employment application. On that day, Mr. Jones, acting on behalf of the School Department, signed a letter written by Ms. Hart, formally notifying Mr. Kelii of the termination. Joint Ex. 11.

2. The letter from Ms. Hart to Mr. Kelii provided as follows:

> January 10, 1994
> Kaiwi Kelii
> 367 Cottage Road, Apartment # 1
> South Portland, Maine 04106
> Dear Mr. Kelii:
> This letter is to address your continued absence from work. On November 3, 1993, you failed to come to work and stated you were ill. Nevertheless, on that day, you came to attend a meeting with me at Deering High School. As you are aware, sick leave can only be utilized when one is too ill to attend work.
> Pursuant to the collective bargaining agreement, we requested documentation of your illness. We did not, however, receive any material until November 15, 1993 when we received a note that contained no information about your doctor's opinion on your ability to work. Because of our concern about your health and your absence from work, we attempted once again to clarify your situation. On November 29, 1993, we sent you a letter requiring you to obtain an evaluation from Dr. Moran. To date, you have not seen Dr. Moran, and have avoided the two appointment dates for evaluation that we have provided to you.

> In late December, you asked if we would talk to your doctor. You stated that your doctor would call to review your case. To date, we have not received permission to speak with your doctor despite our providing a release form to you, and we have not received a phone call from your doctor.
> Your unwillingness to cooperate with the School Department has made it impossible for the School Department to assess your alleged illness, your absence from work, and your ability to return to work. Your refusal to undergo an evaluation and to provide appropriate information to the School Department constitutes continued insubordination. The School Department cannot allow you to return to work until it can assess your condition. To this end, we have scheduled a final appointment with Dr. Moran for Wednesday, January 26, 1994 at 3:00 p.m. If you miss this appointment, you will be subject to disciplinary procedures up to and including discharge.
> Please call me if you have any questions concerning this letter.
> Sincerely yours,
> /s/ Joline Hart
> Director of Human Resources
> Defendant's Ex. 19.

## II. DISCUSSION

The only claim that remains in this case arises under the Maine Whistleblowers' Protection Act which prohibits discrimination against an employee because:

> The employee, acting in good faith ... reports orally or in writing to the employer or a public body what the employee has reasonable cause to believe is a violation of a law or rule adopted under the laws of this State, a political subdivision of this State or the United States.

26 M.R.S.A. § 833(1)(A). This Court has previously held that the Maine Whistleblowers' Protection Act should be analyzed under the same method as Title VII actions. *Wytrwal v. Mowles*, 886 F.Supp. 128, 147 (D.Me. 1995); *Muehlhausen v. Bath Iron Works*, 811 F.Supp. 15, 19 (D.Me.1993).

When a Title VII plaintiff is unable to offer direct proof of her employer's discrimination—as was so here—the plaintiff has the initial burden of production according to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2746, 125 L.Ed.2d 407 (1993). Under the burden-shifting framework set forth in *McDonnell Douglas*, the plaintiff must first present a prima facie case of unlawful retaliation. If the plaintiff successfully bears this relatively light burden, it is presumed that the employer engaged in impermissible retaliation. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).

Once the plaintiff has established his prima facie case, the burden shifts to the defendant, who must then proffer a legitimate, nondiscriminatory reason for its decision. *Id.; Lawrence v. Northrop Corp.*, 980 F.2d 66, 69 (1st Cir.1992). If the employer articulates such a reason, the burden of production shifts back to the plaintiff to prove that the reason offered is a pretext for prohibited discrimination. Courts have commonly said that once the employer has proffered a legitimate, nondiscriminatory reason for its adverse employment decision, the presumption generated by the employee's prima facie case disappears, and the burden returns to the employee to prove that the reason advanced by the employer for the adverse employment action constituted a mere pretext for unlawful retaliation. *See, e.g., Goldman v. First National Bank of Boston*, 985 F.2d 1113, 1117 (1st Cir.1993); *Lawrence*, 980 F.2d at 69.

The plaintiff must then introduce sufficient evidence to support two additional findings: (1) that the employer's articulated reason for the job action is a pretext, and (2) that the true reason is retaliatory. *Woods v. Friction Materials, Inc.*, 30 F.3d 255, 260 (1st Cir. 1994); *Goldman*, 985 F.2d at 1117; *Lawrence*, 980 F.2d at 69–70 (citing *Mesnick v. General Elec. Co.*, 950 F.2d 816, 825 (1st Cir.1991); *Villanueva v. Wellesley College*, 930 F.2d 124, 127 (1st Cir.1991); *Connell v. Bank of Boston*, 924 F.2d 1169, 1172 (1st Cir.1991); *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 9 (1st Cir.1990); *Olivera v. Nestle P.R., Inc.*, 922 F.2d 43, 48 (1st Cir.1990)). The plaintiff may rely on the same evidence to prove both pretext and discrimination, but the evidence must be sufficient for a reasonable factfinder to infer that the employer's decision was motivated by discriminatory animus. *See Goldman*, 985 F.2d at 1117–18. The ultimate burden of persuasion remains with the plaintiff. *Hicks*, 509 U.S. at 508, 113 S.Ct. at 2747; *Medina-Munoz*, 896 F.2d at 9.

### A. Plaintiff's Prima Facie Case

To establish a prima facie case of reprisal under the Maine statute, Mr. Kelii must show that "(1)[ ]he engaged in activity protected by the statute; (2)[ ]he was the subject of adverse employment action; and (3) there was causal link between the protected activity and the adverse employment action." *Bard v. Bath Iron Works Corp.*, 590 A.2d 152, 154 (Me.1991). The Court concludes that Mr. Kelii satisfies his prima facie burden.

In order to prove that the complaints lodged by Plaintiff regarded activities protected by the Act, it must be established that he had a reasonable belief that the School Department was in violation of the law or a rule. *Id.* at 154. There was evidence admit-

ted at trial showing that Mr. Kelii was engaged in conduct which entitles him to protection under the Act: on March 19, 1993, Mr. Kelii complained to the School Department and the Maine Department of Labor regarding the safety of working conditions for shoveling snow off the Deering High School roof; on April 5, 1993, Mr. Kelii filed a complaint with the MHRC; and sometime in the fall of 1994, Mr. Kelii made a complaint to the Maine Department of Labor regarding the lack of protective clothing provided for removal of insulation. In two of the three above-cited instances, the Court finds that Mr. Kelii had a reasonable belief that the School Department was in violation of a law or rule.[3]

Without question, Mr. Kelii satisfies the adverse employment action prong of the test: he was terminated. In support of the causal link, Plaintiff points to the fact that Mr. Wakefield circulated a petition in the spring of 1993, after the snow removal incident, for the purpose of getting Plaintiff transferred or fired and Plaintiff was, in May 1993, involuntarily transferred to another job site within the School Department. In addition, Plaintiff relies on the memorandum that Mr. Jones wrote to Ms. Hart, dated November 11, 1993, in which Mr. Jones recommended that the School Department devise a plan by which to terminate Mr. Kelii. Plaintiff's Ex. 14. Part of the stated basis for his recom-

mendation was the time-consuming nature of handling the administrative complaints made by Mr. Kelii. *Id.* The memorandum further recommended that Mr. Kelii's employment be terminated "for insubordination as described in a memo from Ray Wakefield ... dated 11/2/93." *Id.*

The Court finds that there is a sufficient causal link between Mr. Kelii's complaints and his termination to satisfy a prima facie case under the Maine Whistleblowers' Protection Act. Although the complaints raised in the spring[4] and fall of 1993 were not particularly close in time to Mr. Kelii's termination on January 31, 1994, that series of events which took place in the spring, coupled with the memorandum from Richard Jones to Joline Hart dated November 11, 1993, in which it was recommended that Mr. Kelii be terminated, convinces the Court that there exists a facially sufficient causal link between the events. Plaintiff's Ex. 14.

## B. Defendant's Articulated Nondiscriminatory Reason

■ The School Department asserts that it terminated Plaintiff's employment because: (1) he failed to attend any of the scheduled psychological examinations and (2) the School Department determined that he falsified his employment application. The Court is satisfied, on the basis of the testimony at trial,

---

**3.** The Court finds that Mr. Kelii had a reasonable belief that the School Department was in violation of some safety rule when, without any demarcation of the roof edges, it requested that the snow be removed from Deering High School's roof. With regard to the incident involving the removal of insulation, the record discloses that the School Department was not in compliance with "rules promulgated by the Maine Board of Occupational Safety and Health" for the appropriate personal protective equipment to be used when handling fiberglass insulation. *See* Plaintiff's Ex. 7.

**4.** Mr. Kelii attempts to link the removal of the beeper and the elimination of the second break with his snow removal complaint; Mr. Wakefield's explanation of these events was different. Specifically, Mr. Wakefield testified that Mr. Kelii's beeper was replaced with a two-way radio after it was brought to his attention that Mr. Kelii was using the beeper to communicate with his family rather than with custodial staff. Similarly, Mr. Wakefield explained that he stopped al-

lowing second breaks for all custodial staff after Mr. Kelii told him that he was unable to complete his work. The Court cannot conclude from the evidence at trial that Mr. Wakefield's explanation is untrue. Therefore, the Court concludes that these events were not in retort to Mr. Kelii's whistleblower conduct.

The circulation of the petition, on the other hand, is causally linked to Mr. Kelii's whistleblower conduct. A petition was circulated by Mr. Wakefield on the Monday following the March 19 snowstorm that stated "I am concerned that Kaiwi Kelii is adversely affecting morale on the D[eering] H[igh] S[chool] staff" and was signed by nine of Mr. Kelii's coworkers. Plaintiff's Ex. 1. The Court concludes that Mr. Wakefield authored as well as circulated the petition regarding Mr. Kelii's effect on the custodial staff's morale. Although Mr. Wakefield was never asked if he had circulated the petition, other witnesses testified that Mr. Wakefield had approached them with the petition and asked them to sign it. Moreover, the first signature on the list was that of Mr. Wakefield. *Id.*

that the School Department terminated Mr. Kelii because of the combination of his failure to attend his scheduled examinations and his failure to disclose his criminal history on his employment application.

Ms. Hart testified about the School Department's numerous attempts to get information regarding Mr. Kelii's medical condition from him, including the name of his treating physician and permission to speak with him or her [5], and her efforts to have him evaluated by a medical professional designated by the School Department. Although Mr. Kelii provided the School Department with some documentation regarding his medical condition, Joint Exs. 6 and 7, he was aware that the School Department found the cursory evaluation note by Dr. Chandler inadequate. The School Department was in the position of having an employee who failed to properly document sick leave, who could not work in his designated position, and who refused to cooperate with its efforts to obtain pertinent medical information. The testimony and exhibits admitted at trial support the School Department's assertion that it took considerable steps in an attempt to clarify the situation regarding Mr. Kelii's medical condition in order to determine what could be done to accommodate Mr. Kelii. Defendant's Exs.15, 16, and 19. Mr. Kelii resisted all attempts by the School Department to better understand the medical reason for his continuing absence.

The School Department also asserts, as an additional ground for Mr. Kelii's termination, his failure to disclose his criminal history on his employment application. Mr. Kelii responds that he did not know that he was convicted of a crime; rather, he thought he had just paid court fees. The Court finds that Mr. Kelii did, in fact, fail to disclose his criminal history on his employment application. *See* Defendant's Exs. 2 and 3. The evidence at trial demonstrated that Mr. Kelii

falsified his application when he checked "no" to the question regarding whether he had ever been convicted of a crime other than a minor traffic offense, when in actuality he had been convicted of assault. Defendant's Ex. 2. The application clearly provides that:

> Any falsification of information or misleading information on this application shall be fully sufficient ground to refuse to employ, or having been employed, shall be immediate cause for dismissal/discharge.

Defendant's Ex. 3 at 2.

### C. Pretext and Discriminatory Motive

Plaintiff, relying on his position that Mr. Wakefield was the real moving force behind his termination and that he was terminated on January 25, argues that the two reasons put forth by the School Department are pretextual.

Plaintiff's case is grounded in the theory that Mr. Wakefield wanted him transferred to another school or terminated altogether in retaliation for his whistleblower activities. *See* Plaintiff's Ex. 1. The Court is convinced that Mr. Wakefield want to get rid of Mr. Kelii. Communication between the two had broken down and, despite the belated effort by Ms. Hart to rectify the situation, the working relationship between the two was irretrievably lost. In addition, Mr. Wakefield seems to have been a major contributing factor to Mr. Kelii's anxiety disorder. Joint Exs. 6 and 8. The testimony adduced at trial, however, revealed that Mr. Wakefield had no authority to make the decision to terminate Mr. Kelii. That decision, the testimony revealed, was made by Ms. Hart in consultation with Mr. Jones. Moreover, there was no evidence that Mr. Wakefield had any input into the decision to terminate Mr. Kelii.[6]

Plaintiff also asserted at trial that he was fired on January 25, 1994, the day before the

---

5. Mr. Kelii testified that he did provide the School Department with a medical release. Even if Mr. Kelii did provide the School Department with a general medical release, this alone, without the name and telephone number of his treating physician, was insufficient for the School Department to determine whether Mr. Kelii was able to return to work.

6. The conclusion that Mr. Wakefield lacked input into the decision to terminate Mr. Kelii is supported by the petition Mr. Wakefield circulated. Mr. Wakefield was a signatory to the petition; therefore, it is evident that he had no more impact on employment decisions with respect to Mr. Kelii than any of the other rank and file custodians. Plaintiff's Ex. 1.

last scheduled psychological evaluation, rather than on January 31, 1994, as the Portland School Department claims. It is alleged, therefore, that Plaintiff was not provided the opportunity to attend the final psychological evaluation. Mr. Jones and Peter Archibald, Mr. Kelii's union representative, both participated in the meeting on January 25, 1994, and both denied that Mr. Kelii was terminated at that meeting. Ms. Hart, although not present at the meeting, testified that it was not until January 31 that she, in connection with Mr. Jones, decided to terminate Mr. Kelii. Mr. Kelii was notified in writing, consistent with the School Department's usual practice, that his employment was terminated. Mr. Kelii's diary entry for that day, although discussing the details of the meeting, does not state that he was terminated at that time. Defendant's Ex. 35. In fact, Mr. Kelii gave January 31, 1994, as the date of his termination when he filed out and filed a complaint with the MHRC. Defendant's Ex. 22. In sum, Mr. Kelii's contention that he was fired on January 25 is simply not supported by the evidence.

Mr. Kelii has failed to satisfy his burden of showing that the reasons for his termination were pretextual, and he has further failed to prove that the true reason for his termination was retaliatory. The court is not persuaded by the Plaintiff's evidence that the Portland School Department's reasons are unworthy of belief. It was necessary for the School Department to fully understand Mr. Kelii's medical condition and limitations before he could return to its employ in any capacity. With the information that Mr. Kelii could not work "at previous job," Joint Ex. 10, and that he was suffering from pronounced "homicidal ideation," Joint Ex. 8, the School Department simply needed to have Mr. Kelii evaluated before it could let him back in the school. Mr. Kelii's refusal to attend the scheduled evaluation appointments made that impossible. Likewise, Mr. Kelii's failure to be forthright about his criminal history alone could have served as a sufficient basis to terminate Plaintiff.

Accordingly, it is **ORDERED** that Count II of Plaintiff's Amended Complaint for recovery under the Maine Whistleblowers' Protection Act be, and it is hereby, **DENIED.** It is further **ORDERED** that Defendant's Motion for Judgment as a Matter of Law on Plaintiff's Maine Whistleblowers' Protection Act claim be, and it is hereby, **GRANTED.**