**Aurelie ROUSSEL, Plaintiff**

v.

**ST. JOSEPH HOSPITAL, Defendant**

**No. 02–CV–124–B–S.**

United States District Court,
D. Maine.

April 2, 2003.

Arthur J. Greif, Gilbert & Greif, P.A., Bangor, for Aurelie Roussel.

Frank T. McGuire, Rudman & Winchell, Bangor, for St Joseph Hospital.

## ORDER

SINGAL, Chief Judge.

An emergency department nurse brings a complaint against her former employer alleging that it discharged her for having exercised her rights under the Maine Whistleblowers' Protection Act ("MWPA"), 26 M.R.S.A. §§ 831–840, in violation of section 4572(1)(A) of the Maine Human Rights Act ("MHRA"), 5 M.R.S.A. §§ 4551–4631. Presently before the Court are three motions: 1) Defendant's Motion for Summary Judgment (Docket # 12); 2) Defendant's Reply to Plaintiff's Response to Defendant's Statement of Undisputed Material Facts and Statement of Additional Facts and Incorporated Motion to Strike ("Defendant's Motion to Strike") (Docket # 18); and 3) Plaintiff's Motion to Strike Pages One Through Thirteen and Numbered Paragraph 133 of Defendant's Reply Statement of Material Facts ("Plaintiff's Motion to Strike") (Docket # 19). For the reasons discussed below, the Court DENIES Defendant's Motion for Summary Judgment and DENIES IN PART and GRANTS IN PART Plaintiff's Motion to Strike. In addition, the Court declares MOOT Defendant's Motion to Strike.

## I. STANDARD OF REVIEW

The Court grants a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is genuine for these purposes if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact is one that has "the potential to affect the outcome of the

suit under the applicable law." *Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 703 (1st Cir.1993). The Court views the record in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor. *McCarthy v. Northwest Airlines*, 56 F.3d 313, 315 (1st Cir.1995).

## II. BACKGROUND

St. Joseph Hospital ("St.Joseph's") hired Aurelie Roussel ("Roussel") as a nurse in its Emergency Department on August 22, 1999. Roussel worked a regular full-time schedule, which consisted of three twelve-hour days per week. During the time Roussel worked at St. Joseph's, Collette Nicole Savoie ("Savoie") was the Clinical Coordinator of the Emergency Department and was responsible for scheduling the Emergency Department nurses. Savoie reported directly to the Director of the Emergency Department, Gloria Attenweiler ("Attenweiler"). In turn, Attenweiler was directly responsible to Diane Swandal ("Swandal"), the Vice President of Patient Care Services.

Soon after Roussel started working at St. Joseph's, the hospital received patient complaints about Roussel's performance in response to random patient survey forms. These complaints alleged rude, abrupt and unprofessional behavior. In January 2000, the hospital received a complaint from a hospital staff member about an inadequate response by Roussel to a serious patient need. Following the January 2000 complaint, Roussel requested to become a contingent or "pool" nurse rather than continue in her position as an Emergency Department nurse. When Attenweiler asked her to remain as a regular employee, however, Roussel agreed to withdraw her request.

On January 14, 2000, Attenweiler, Swandal and Savoie held an Emergency Department staff meeting to discuss issues of concern to the nurses and to "try to make the Department a better and happier place to work." (*See* Savoie Dep. at 20). At this meeting, Roussel voiced her concern that sometimes nurses were not able to take breaks or lunches. On February 4, 2000, Roussel again brought the issue of breaks to her superiors' attention by delivering a note to Savoie, Attenweiler and Swandal. The note, which was signed by three other nurses, stated as follows:

> Please note that in regard to the ER's ongoing problem of not allowing any breaks including lunch when the ER is busy, I called the Maine Labor Bureau. I was informed that according to Maine title 26, section 601, a business is required to provide its employees a 30 min break for every 6 HR worked. I was told this should be posted in a visible place in the business. If this is not being provided, all that is required is to notify the Wage + Hour Division, and an inspector will be sent out to the business, the situation investigated, and appropriate action taken. Please take seriously this ongoing problem so that no further action will be necessary.

(*See* Roussel Dep. at Ex. 3). In late February 2000, Roussel became ill and was eventually diagnosed with Graves' disease. When Roussel told Savoie that she needed time to adjust to her medication, Savoie arranged to allow her to work a period of time on light duty. Other than working one partial day of light duty on March 10, 2000, however, Roussel did not return to work after February 27, 2000. On March 16, 2000, Roussel began receiving short-term disability benefits, which she continued to receive until June 18, 2000. In late March, Roussel submitted a medical note indicating an ongoing need for leave time. In response, the hospital completed a Request for Leave of Absence form on her

behalf for leave from March 12, 2000, on-going.[1] The request, however, was denied. The reasons stated on the Request for Leave of Absence form were twofold: 1) "Has not been here a year."; and 2) "Has not kept us informed as to progress or plans. Simply does not show up." (*See* Def.'s SMF at Ex. A (Docket # 13).)

On April 3, 2000, Attenweiler called Roussel and terminated her employment with the hospital. At the urging of Roussel's doctor, however, St. Joseph's decided to reconsider its decision. Accordingly, on April 17, 2000, TinaMarie Bowlin–Norris ("Bowlin–Norris") mailed a letter to Roussel asking her to call the hospital immediately so that she could be placed on the work schedule again. In response, Roussel's attorney sent a reply letter on her behalf stating that she was working as a pool employee at Acadia Hospital and was not interested in returning to her position at St. Joseph's.

Presently, Roussel alleges that Attenweiler terminated her in retaliation for the complaint she made on February 4, 2000, and requests relief under the MHRA. St. Joseph's moves for summary judgment on the grounds that: 1) the Court lacks subject matter jurisdiction because the National Labor Relations Board ("NLRB") has exclusive jurisdiction over Roussel's retaliatory discharge claim; and 2) Roussel fails to establish a prima facie case and establish genuine issues of material fact that St. Joseph's proffered reasons for her discharge were pretext. In the alternative, St. Joseph's requests partial summary judgment on Roussel's claims for front pay, back pay and punitive damages. Moreover, St. Joseph's moves to strike portions of Roussel's reply statement of material facts. Roussel, in turn, moves to strike certain portions of Defendant's responsive statement of material facts. As a threshold matter, the Court addresses the jurisdictional issue first and then moves on to consider the merits of Roussel's retaliatory discharge claim, St. Joseph's requests for partial summary judgment and the parties' respective motions to strike.

## III. DISCUSSION

### A. Jurisdiction

█ Pursuant to section 7 of the National Labor Relations Act ("NLRA"), employees have the right to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection. *See* 29 U.S.C. § 157; *NLRB v. Portland Airport Limousine Co.*, 163 F.3d 662, 664 (1st Cir.1998). In turn, section 8 of the NLRA makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [section 7 of the Act]." 29 U.S.C. § 158(a)(1); *Portland Airport Limousine*, 163 F.3d at 664. Pursuant to the Supreme Court's decision in *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), federal courts must defer to the exclusive competence of the National Labor Relations Board ("NLRB") when the employee activity is arguably protected by section 7 or prohibited by section 8 of the NLRA. *Tamburello v. Comm–Tract Corp.*, 67 F.3d 973, 976 (1st Cir.1995).

█ The term "concerted activity" is not defined in the NLRA. *Portland Airport Limousine*, 163 F.3d at 665. Howev-

---

1. The hospital had an internal leave policy, which provided that an employee would not be entitled to leave until he or she had worked for the hospital for a period of one year. The policy, however, allowed for a mechanism for the Department Director (i.e., Attenweiler) or the Vice President (i.e., Swandal) to recommend an exception to the general rule for employees within their first year of employment.

er, the term has been interpreted generally to include activity "engaged in with or on the authority of other employees, and not solely by and on behalf of the employee himself." *Id.* (internal quotations and citations omitted). The objective standard of concerted activity "encompasses those circumstances where individual employees seek to initiate or to induce or to prepare for group action, as well as individual employees bringing truly group complaints to the attention of management." *Id.*

Plaintiff did not engage in concerted activity. Although Plaintiff acknowledged that her complaint was designed to benefit both herself and others, Plaintiff did not discuss the issue with the other nurses prior to writing the note. *See Super Market Service Corp. v. Heller,* 227 N.L.R.B. 1919, 1927 (1977) (finding no concerted activity based in part on fact that co-employees mentioned in the letter had "no part in writing the letter, no notice when it was to be written [and] no opportunity to make suggestions as to its contents . . ."). Rather, Plaintiff wrote the note alone,[2] delivered the note to management alone and made the initial call to the Maine Labor or Bureau alone. *See E.I. Du Pont De Nemours & Co. v. NLRB,* 707 F.2d 1076, 1078 (9th Cir.1983) ("The requirement of 'concert' denies protection to activity that, even if taken in pursuit of goals that would meet the test of 'mutual aid or protection,' is only the isolated conduct of a single employee.")

Even assuming Plaintiff engaged in concerted activity, however, Plaintiff's claim is not preempted by the NLRA. *Garmon* provides an exception where the conduct at issue is of only a peripheral or collateral concern to federal labor law. *Chaulk Servs. v. Mass. Comm'n Against Discrimination,* 70 F.3d 1361, 1364–65 (1st Cir.1995). Here, Plaintiff claims that Defendant terminated her employment in retaliation for exercising her rights under the MWPA. Such a claim is merely peripheral to the NLRA. *See Veal v. Kerr–McGee Coal Corp.,* 682 F.Supp. 957, 962 (S.D.Ill.1988) (finding that plaintiff's claim for retaliatory discharge resulting from his filing a workmen's compensation claim not preempted by the NLRA because the conduct at issue only of peripheral concern to the Act's purpose). The Court, therefore, finds that Plaintiff's claim is not preempted by the NLRA and discusses the merits of Plaintiff's retaliatory discharge claim.

**B. Retaliatory Discharge**

Plaintiff alleges that she was discharged in violation of section 4572(1)(A) (2002) of the MHRA for having exercised her rights under the MWPA.[3] The analytical framework used in Title VII retaliation claims applies to MHRA retaliation claims as well. *Wytrwal v. Saco Sch. Bd.,* 70 F.3d 165, 171–72 (1st Cir.1995). Where, as in this case, there is no direct evidence of the defendant's retaliatory animus, courts rely on the *McDonnell Douglas* burden-shifting framework to allocate and order

---

**2.** Although Plaintiff asked other nurses to sign the note, this was only after Plaintiff had already written the note alone. There is no evidence that any other nurse had a part in writing the note or that another nurse had any input with regard to the content of the note.

**3.** 5 M.R.S.A. § 4572(1)(A) provides that it is unlawful employment discrimination

[f]or any employer to . . . discriminate against any applicant for employment . . . because of previous actions taken by the applicant that are protected under Title 26 . . .; or, because of those reasons, to discharge an employee or discriminate with respect to hire, tenure, promotion, transfer, compensation, terms, conditions or privileges of employment or any other matter directly or indirectly related to employment . . . .

the parties' evidentiary burdens. *Fennell v. First Step Designs,* 83 F.3d 526, 535 (1st Cir.1996).

Under the *McDonnell Douglas* burden-shifting framework, the plaintiff must first present a prima facie case of unlawful retaliation. *Id.* Once the plaintiff makes a prima facie showing, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for its employment decision. *Fennell,* 83 F.3d at 535. If the defendant does so, the ultimate burden falls on the plaintiff to demonstrate both that the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus. *Id.* On summary judgment, the need to order the presentation of proof is largely obviated, and a court may often dispense with strict attention to the burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a jury question as to pretext and discriminatory animus. *Id.*

Although Defendant refutes that Plaintiff has even made out a prima facie case of retaliation, the Court finds that Plaintiff has met that burden. The MWPA protects an employee from discrimination when she has complained to her employer in good faith about a workplace-related condition or activity that she reasonably believes is illegal, unsafe, or unhealthy. 26 M.R.S.A. § 833(1)(A) (2002); *See Bard v. Bath Iron Works Corp.,* 590 A.2d 152, 153, 155 (Me.1991). Here, Plaintiff complained to her employer that she believed the hospital was violating Maine law by failing to make arrangements to permit the emergency room nurses to take breaks. Plaintiff based her complaint on information she obtained from the state labor board. Accordingly, Plaintiff's complaint to her employer falls squarely within the language of section 833(1)(A).[4]

In addition, Plaintiff shows that she suffered from an adverse employment action because she was terminated. *See Kelii v. Portland Sch. Dep't,* 988 F.Supp. 14, 20 (D.Me.1997). The Court does not agree with Defendant's contention that Plaintiff is estopped from arguing that she suffered an adverse employment action under *Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) because she was receiving disability benefits and unable to work. *Id.,* at 805–06, 119 S.Ct. 1597 (holding that a plaintiff's statement of total disability in a disability application will estop her from asserting that she can perform her job with reasonable accommodation under her Americans with Disabilities Act claim absent sufficient explanation). *Policy Management* is inapposite to the present case. Unlike an ADA plaintiff, a retaliatory discharge plaintiff does not need to show that she was able to work during the relevant time period in order to bring her claim.

■ Having said that, the Court arrives at the dispositive question of whether Plaintiff has, on the summary judgment record, established genuine issues of fact that Defendant's business reasons were a pretext and that her discharge was in retaliation for her complaint about the break issue. *Fennell v. First Step Designs,* 83 F.3d 526, 535 (1st Cir.1996). Defendant states that, because Plaintiff had been employed at St. Joseph's for less than one

---

4. Defendant argues that Plaintiff was unreasonable in believing that Defendant was in violation of section 601 because her complaint relates only to times when the Emergency Department is busy (i.e., times when allowing a nurse to take a break would pose a clear danger to life and to public health). Contrary to Defendant's argument, however, the record shows that it was not Plaintiff's intention that anyone abandon a patient or leave the unit during a critical situation.

year, she was ineligible for a leave of absence to cover her missed time, unless the hospital was willing to grant an exception to the leave policy. According to Defendant, neither Swandal nor Attenweiler were willing to recommend an exception to the general no-leave policy because Plaintiff had: 1) been the subject of complaints by both patients and another nurse; 2) been absent from work for a month, having actively worked in the emergency department for only five months; and 3) failed to keep the hospital informed of her progress or plans. Defendant claims that, because Plaintiff was not recommended for an exception to the leave of absence policy, Attenweiler and Swandal recommended that she be terminated instead.

Based on the facts in the record, however, a reasonable jury could find that Defendant's proffered reasons did not actually motivate its employment decision. First, the record shows that Attenweiler asked Plaintiff to reconsider her decision to retire, even after Plaintiff received several work-related complaints. In addition, the contemporaneous paperwork on which Defendant indicated disapproval of a medical leave of absence for Plaintiff does not contain any mention of complaints as a reason for disapproving leave.

Second, there is a material dispute as to whether Defendant approved Plaintiff's month-long absence. According to Plaintiff, both Savoie and Attenweiler told her in March 2000, that her month-long absence would not be a problem. If this was, in fact, the case then it would serve to undercut the legitimacy of Defendant's proffered reasons for terminating Plaintiff.

Third, there is a material dispute as to whether Plaintiff kept the hospital informed of her progress and plans. Plaintiff has offered evidence that she submit-

ted medical verification of her absences on four separate occasions throughout the month of March.

In light of the above contradictions, the Court finds that there are sufficient facts to cast doubt on Defendant's asserted bases for terminating Plaintiff's employment. Consequently, the Court denies Defendant's request for summary judgment on Plaintiff's retaliatory discharge claim.

## C. Punitive Damages

In the alternative, Defendant seeks partial summary judgment on Plaintiff's claim for punitive damages. In order to obtain punitive damages under the MHRA, Plaintiff must show by clear and convincing evidence that Defendant's conduct was motivated by ill will or was so outrageous that malice may be implied. *Gayer v. Bath Iron Works Corp.*, 687 A.2d 617, 622 (Me.1996). There are contested material facts with regard to whether Defendant's conduct was motivated by ill will. Plaintiff claims that, upon receiving the note, Attenweiler was very negative and stated that Plaintiff's actions "would be remembered in a negative way" and that she "would be sorry." (*See* Roussel Dep. at 38, 135). Defendant, on the other hand, claims that Attenweiler did not have a problem with Plaintiff's complaint. Therefore, the Court denies Defendant's motion with regard to punitive damages. The motion may be renewed as appropriate during the trial.

## D. Back Pay

Defendant's argument that Plaintiff is not entitled to recover back pay is premature. *See EEOC v. Jacksonville Shipyards, Inc.*, 690 F.Supp. 995, 1001 (M.D.Fla.1988). The Court, therefore, reserves the issue for trial.[5]

---

**5.** Notwithstanding the fact that Plaintiff re-

quests front pay in her Complaint, Plaintiff

### E. Motions to Strike

In violation of Local Rule 56, Defendant's reply statement of material facts includes several requests to strike (collectively "Defendant's Motion to Strike") the responsive portion of "Plaintiff's Response to Defendant's Statement of Undisputed Material Facts and Statement of Additional Facts." Specifically, Defendant's Motion to Strike is contained within pages one through thirteen of the responsive statement of material facts. Plaintiff moves to strike these pages from Defendant's reply statement of material facts. The Court denies Plaintiff's request in light of the fact that Defendant requests leave to file a separate motion to strike should the Court grant Plaintiff's motion. Because the Court's disposition regarding Defendant's requests to strike is obvious from the summary judgment record adopted by the Court, however, the Court declares Defendant's Motion to Strike moot.

In addition, Defendant's responsive statement of material facts includes an additional statement of material fact at numbered paragraph 133. Plaintiff moves to strike numbered paragraph 133 on the gounds that its addition violates Local Rule 56. The Court grants Plaintiff's request.

### IV. CONCLUSION

For the reasons discussed above, the Court: 1) DENIES Defendant's Motion for Summary Judgment (Docket # 12); 2) GRANTS Plaintiff's request to strike numbered paragraph 133 of Defendant's responsive statement of material facts but DENIES Plaintiff's request to strike pages one through thirteen of the same (Docket # 19); and 3) declares Defendant's Motion to Strike MOOT (Docket # 18).

SO ORDERED.

states in her opposition memorandum that she is not seeking such relief. The Court, therefore, dismisses Defendant's request for partial summary judgment on Plaintiff's claim for front pay as moot.