Barbara WYTRWAL, Plaintiff–Appellant,

v.

SACO SCHOOL BOARD, et al., Defendants–Appellees.

No. 95–1543.

United States Court of Appeals, First Circuit.

Heard Sept. 12, 1995.

Decided Nov. 21, 1995.

Carl E. Kandutsch, with whom William C. Knowles, Portland, ME, James E. McCormack, Lewiston, MI, and Verrill & Dana, Portland, ME, were on brief, for appellant.

Jerrol A. Crouter, with whom Eric R. Herlan and Drummond Woodsum & MacMahon, Portland, ME, was on brief, for appellees.

Before TORRUELLA, Chief Judge, LYNCH, Circuit Judge, and STEARNS,* District Judge.

TORRUELLA, Chief Judge.

■ Plaintiff-appellant Barbara Wytrwal ("Appellant" or "Wytrwal"), a former special education teacher at Saco Middle School in Saco, Maine, sued defendant-appellees, the then-Superintendent of Schools for Saco School District Dr. Cynthia Mowles, the Saco School Board and the City of Saco (collectively, the "Appellees"), for retaliatory nonrenewal of her employment contract under (1) the Civil Rights Act, 42 U.S.C. § 1983; (2) the Maine Whistleblowers' Protection Act, 26 M.R.S.A. § 833(1); and (3) a common law theory of intentional infliction of emotional distress.[1] Following a bench trial, the district court denied all of appellant's claims. Appellant seeks review of that decision here. We affirm the decision of the district court.

## I. BACKGROUND

We begin with the facts as supportably found by the district court after a bench trial. *See Wytrwal v. Mowles,* 886 F.Supp. 128, 130–42 (D.Me.1995).

Wytrwal began to teach behaviorally impaired students at Saco Middle School in the Fall of 1990. Wytrwal was in probationary status for her first two years on the job, like all other new teachers at the school. At the end of the second year, teachers are considered for continuing contract status—similar to being awarded tenure. The decision on Wytrwal's status rested with Dr. Cynthia Mowles ("Mowles"), the then-Superintendent of Schools for the Saco School District, who decided not to grant continuing contract status. Mowles testified that she made her decision based on comments from Saco Middle School's principal Joseph Voci ("Voci") and assistant principal Gregory T. Goodness ("Goodness") regarding Wytrwal's trouble managing her students, her difficulties working with supervisors and other co-workers, and her time spent out of the classroom. The district court viewed evidence on Wytrwal's mental illness, unknown to appellees before pretrial discovery, as corroborative of the claim that she had been absent from the classroom to a considerable degree. In contrast, Wytrwal contends that she was fired for stating at a school board meeting that the school's placement of special education students violated state and federal regulations. Wytrwal has alleged that these violations exacerbated her already-difficult job.

By all accounts, Wytrwal's first year at Saco Middle School was quite successful. During her second year, however, she began to have some problems. Her class grew much larger that second year, reaching a peak of eighteen, as compared to six the year before. Several of the more problematic students during her second year were considered by school officials extremely dangerous, suicidal, and violent to themselves and others. In addition, two of her second year students were on court-ordered probation and, as a condition of their probation, they were not supposed to have contact with each other. Finally, on February 11, 1992, Wytrwal spoke at an executive session of the Saco School Board at the invitation of Elizabeth DeSimone ("DeSimone"), a School Board member alarmed by a particular domestic disturbance involving one of Wytrwal's students.

Present at the meeting were Wytrwal, five school administrators, including Mowles, Voci, Goodness and Special Education Director David Stickney ("Stickney"), and five school board members, including DeSimone. All agree that Wytrwal spoke at the meeting and that it was unusual for a teacher to address a School Board meeting. Wytrwal testified that, at the meeting, she focused on the impact of not having programs designed specifically to meet the needs of emotionally

---

* Of the District of Massachusetts, sitting by designation.

1. Because plaintiff-appellant's statement of issues includes only these three claims, she has abandoned her former fourth claim under the common law theory of wrongful discharge, and it is therefore waived. *Washington Legal Found. v. Massachusetts Bar Found.,* 993 F.2d 962, 970 n.

4 (1st Cir.1993) (ruling that claims not included in statement of issues have, on appeal, been abandoned and are waived); *Rivera–Gómez v. de Castro,* 843 F.2d 631, 635 (1st Cir.1988) ("A litigant has an obligation 'to spell out its arguments squarely and distinctly' ... or else forever hold its peace.").

and behaviorally impaired students. Furthermore, according to Wytrwal, she specifically told the board that Stickney had prevented the placement of some students in more appropriate, and more expensive, programs outside of the school district. She added that Stickney had said that, if necessary, he would overrule the consensus student placement judgments of teams of teachers, social workers, and other professionals, which would be an illegal act on his part.

Defendants-appellees uniformly testified that Wytrwal's presentation at the school board meeting did not include allegations that Saco Middle School was violating special education laws by failing to appropriately place students, but the district court rejected this testimony, concluding that "the testimony at trial of the administrators and school board members was fabricated in an attempt to cover up what really occurred at the board meeting." In particular, the district court found DeSimone's claimed "complete lapse in memory" at trial on the subject of Wytrwal's presentation to be "highly suspect," given that Wytrwal attended the meeting at DeSimone's invitation. Not surprisingly, the district court inferred that Wytrwal told the school board that Saco Middle School was violating special education laws by failing to appropriately place students, and that Wytrwal's presentation to the board was a motivating factor in the decision not to renew her contract.

However, the district court also found that there was evidence that Wytrwal had difficulties with Stickney that preceded the presentation before the school board. Wytrwal herself testified that she argued vehemently with Stickney in private regarding the allegations of violations of law. She also testified that Stickney attempted to claim credit for a special education program she had designed. Furthermore, Stickney testified that he was put off by a memo from Wytrwal criticizing the way he had introduced a social worker to Wytrwal and her students, even though she had worked for the school district for less than eight weeks at the time.

Stickney also testified that, two days after the school board meeting, Wytrwal angrily stormed out of a meeting with him, regular school teachers, and other professionals, as a result of a disagreement regarding a student's educational plan. Stickney testified that he decided at that point not to recommend Wytrwal for a continuing contract,[2] and that he then discussed with Voci his concerns about Wytrwal's behavior. On February 27, 1992, Stickney sent a letter ("the February 27 letter") to Wytrwal outlining his criticisms of her. Wytrwal took the letter to Jeffrey Wilder ("Wilder"), a union representative, in order to get it removed from her personnel file. Eventually, a meeting was convened with Mowles, Wytrwal, Stickney and Wilder, at the end of which Mowles instructed Stickney to keep the February 27 letter out of Wytrwal's file and to rewrite the letter, giving a draft to Wytrwal and Wilder. Stickney refused to redraft the February 27 letter.

On April 9, 1992, Voci gave Wytrwal an evaluation he had written and told her that he had recommended to Mowles that her contract not be renewed. Wytrwal testified that she was shocked to learn she would not be renewed. A few days later, Mowles wrote to Wytrwal informing her that she would not be continued as a teacher in special education at the Saco Middle School.

Wytrwal subsequently brought this action alleging that her contract was not renewed in retaliation for her constitutionally-protected speech regarding the school's noncompliance with state and federal special education regulations. Wytrwal here seeks review of the district court's denial of her claims under the Civil Rights Act, 42 U.S.C. § 1983, the Maine Whistleblowers' Protection Act, 26 M.R.S.A. § 833(1), and under a Maine common law theory of intentional infliction of emotional distress.

## II. STANDARDS OF REVIEW

With respect to Wytrwal's § 1983 claim, the standard of review must be interpreted in conjunction with the substantive legal standard involved, enunciated in *Mt.*

---

2. The district court noted that this statement contradicted other testimony by Stickney that he had made up his mind in Fall 1991 that Wytrwal should not be renewed.

*Healthy City Board of Ed. v. Doyle,* 429 U.S. 274, 285, 97 S.Ct. 568, 575, 50 L.Ed.2d 471 (1977). *See also O'Connor v. Steeves,* 994 F.2d 905, 913 (1st Cir.), *cert. denied by Town of Nahant, Mass. v. O'Connor,* —— U.S. ——, 114 S.Ct. 634, 126 L.Ed.2d 593 (1993). Findings on "what is protected free speech" are subject to de novo review. *Duffy v. Sarault,* 892 F.2d 139, 145 (1st Cir.1989); *see also O'Connor,* 994 F.2d at 912–13. However, findings on "whether that speech substantially affected a defendant's employment decision and whether the defendant has met his preponderance burden that the decision would be made anyway" are subject to review under the clearly erroneous standard. *Duffy,* 892 F.2d at 139; *see also O'Connor,* 994 F.2d at 913 (concluding that clear error review is appropriate where judgment is entered after a trial on the merits). Thus, the clearly erroneous standard applies to the § 1983 finding that Wytrwal challenges, namely, whether appellees met their preponderance burden under *Mt. Healthy. Duffy,* 892 F.2d at 145–46.

■ With respect to the state law claims of retaliatory nonrenewal in violation of the Maine Whistleblowers' Protection Act and of intentional infliction of emotional distress, after a bench trial, we will not set aside the trial court's findings of fact unless demonstrated to be clearly erroneous. *Williams v. Poulos,* 11 F.3d 271, 277 (1st Cir.1993), *cited in N.H. Ball Bearings v. Aetna Cas. and Sur. Co.,* 43 F.3d 749, 752 (1st Cir.1995). Mistakes of state law are subject to de novo review. *Crellin Technologies, Inc. v. Equipmentlease Corp.,* 18 F.3d 1, 7 (1st Cir.1994); *N.H. Ball Bearings,* 43 F.3d at 752.

### III.  DISCUSSION

#### A.  42 U.S.C. 1983

■ Appellant alleges that Saco Middle School chose not to renew her contract because of her school board presentation, and that this nonrenewal by a state actor because of her exercise of her constitutional rights entitles her to redress. 42 U.S.C. § 1983.[3] We uphold the district court's conclusions, unchallenged by appellees here, that appellant spoke on a matter of public concern and that her interest in that expression outweighed countervailing governmental interests in promoting the efficient performance of the service provided by its employees. *See Connick v. Myers,* 461 U.S. 138, 146, 150, 103 S.Ct. 1684, 1691–92, 75 L.Ed.2d 708 (1983). However, the district court also concluded that while appellant's speech was a "motivating" factor in the employment decision, appellees were not liable, since they showed by a preponderance of the evidence that they would have made the same decision in the absence of the protected conduct. *See Duffy,* 892 F.2d at 145; *Mt. Healthy,* 429 U.S. at 285, 97 S.Ct. at 575. As a result, the district court denied appellant's § 1983 claims. Appellant challenges the district court's finding that appellees met this burden.

■ The district court applied the correct legal standard, that of *Mt. Healthy,* which directs that the plaintiff-employee must first show that the protected expression was a substantial or motivating factor in the adverse employment decision; if the plaintiff meets this test, the defendant governmental entity must be afforded an opportunity to show "by a preponderance of the evidence that [it] would have reached the same decision . . . even in the absence of the protected conduct." *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576 (1977).

■ Under review for clear error, we uphold the district court's finding that appellant's protected conduct was a "motivating" factor behind the Board's decision not to rehire her. The district court's finding had ample evidentiary support, given Wytrwal's overall testimony, DeSimone's questionable testimony of a complete lapse in memory regarding Wytrwal's presentation, Stickney's

---

**3.** Which states in relevant part that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

own testimony that he was angry when he left the meeting, and the fact that Stickney put his criticisms of Wytrwal into writing for the first time only 16 days after the meeting.

However, we also uphold as not clearly erroneous the district court's factual finding that appellees established, by a preponderance of the evidence, that they would not have renewed appellant's contract even in the absence of the protected conduct. The district court found sufficient support for this ruling in the evidence that Wytrwal had an untenable working relationship with Stickney, the special education director; in testimony by Mowles, Goodness and Voci that they had ongoing concerns throughout the second year with Wytrwal's performance, including difficulties working with other specialists involved in her students' education; and in evidence that Wytrwal spent a lot of time out of the classroom, corroborated by other evidence of her mental illness.

Appellant contends that the district court erred in its finding that appellees carried their burden of persuasion, particularly in light of the district court's conclusion that appellees fabricated their testimony. However, that part of appellees' testimony that the district court rejected concerned appellees' version of the content of appellant's presentation at the school board meeting. The district court found in favor of appellant that her speech was both protected conduct and a substantial or motivating factor in her termination. However, the district court credited appellees' testimony regarding Wytrwal's job performance. Such a choice is within the discretion of the factfinder, *NLRB v. Izzi*, 395 F.2d 241, 243 (1st Cir.1968) (factfinder may credit the rest of a witness' testimony even if part is not believable). Ultimately, such credibility determinations are the unique role of the factfinder. *Flanders & Medeiros, Inc. v. Bogosian*, 65 F.3d 198, 204 n. 4 (1st Cir.1995) (assessing credibility is a task for the factfinder); *Connell v. Bank of Boston*, 924 F.2d 1169, 1178 (1st Cir.1991) ("[W]e [the Court of Appeals] are not to weigh the evidence or make credibility judgments."). We do not find clear error.

Finally, we must reject appellant's contention that appellees' reasons for terminating her must have been independent from her protected conduct in the sense that they must be unrelated by subject matter. In *Mt. Healthy*, the Supreme Court explicitly rejected a proposed test that would have required that the alternative grounds for denial of a teacher's tenure be "independent of any First Amendment rights or exercise thereof" as overprotective. *Mt. Healthy*, 429 U.S. at 285, 97 S.Ct. at 575 (stating that the proper test in a "mixed motive" context must "protect[ ] against the invasion of constitutional rights without commanding undesirable consequences not necessary to the assurance of those rights"; including undeserved grant of tenure as such an undesirable consequence). It is true that *Mt. Healthy* does state that school boards should be allowed to prove to a trier of fact that they would not have rehired teachers for reasons "quite apart from" their protected conduct. *Id.* at 286, 97 S.Ct. at 575. But this language in the opinion cannot mean that if there are other valid reasons, such as a poor relationship with superiors and coworkers, these reasons are inadmissible if related to the protected conduct, since *Mt. Healthy* also explicitly criticizes tests of causation that could place employees in a better position as a result of the exercise of constitutionally protected conduct than they otherwise would have occupied had they done nothing. *Id.* at 285, 97 S.Ct. at 575. The interpretation suggested by appellant would have the unfortunate effect of allowing plaintiff-employees to immunize themselves against their prior problems with defendant supervisors by their later protected conduct. We decline to adopt such a rule.

### B. Maine Whistleblowers' Protection Act

Appellant asks that this Court overturn the rejection of her claim under the Maine Whistleblowers' Protection Act on the grounds that the district court erred in finding that appellees had proven by a preponderance of the evidence that her contract would not have been renewed absent her protected conduct. In light of the absence of Maine case law regarding the content of the burden appellees must bear under the stat-

ute,[4] we agree with the district court's decision to apply the federal standards arising under Title VII case law as other courts have in similar situations. *See LaFond v. General Physics Services Corp.*, 50 F.3d 165, 172 (2d Cir.1995); *Rosen v. Transx Ltd.*, 816 F.Supp. 1364, 1367–68 (D.Minn.1993); *Melchi v. Burns International Security Services, Inc.*, 597 F.Supp. 575, 581 (E.D.Mich.1984); *Kennedy v. Guilford Technical Community College*, 115 N.C.App. 581, 448 S.E.2d 280, 281–82 (1994). Appellant does not, in any case, contest the district court's decision to apply federal standards.

■ *McDonnell Douglas v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973) adopts a three stage inquiry. *Id.* First, appellant must establish a prima facie case. *Id.* One Maine case defines this burden in particular under the Maine Whistleblowers' Protection Act. *See Bard v. Bath Iron Works Corp.*, 590 A.2d 152, 154 (Me.1991) (defining prima facie case, but finding that former employee did not satisfy his burden thereunder, and therefore not considering employer's burdens). To establish a prima facie case of violation of the Maine Whistleblowers' Protection Act, appellant must show that (1) she engaged in activity protected by the statute, (2) she was the subject of adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action. *Id.* In *Bard*, the Supreme Judicial Court of Maine cited to a federal case, *Moon v. Transport Drivers, Inc.*, 836 F.2d 226, 229 (6th Cir.1987), which in turn relied on discrimination law principles. Under such principles, a prima facie case gives rise to a rebuttable presumption that the employer unlawfully discriminated against the Title VII plaintiff. *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 15 (1st Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1958, 131 L.Ed.2d 850 (1995). Similarly, therefore, a prima facie case of violation of the Maine Act gives rise to a rebuttable presumption that

the employer retaliated against the employee for reporting illegal activities. *See McDonnell Douglas v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973).

■ Subsequently, at the second stage of the *McDonnell Douglas* inquiry, the employer must produce sufficient competent evidence, taken as true, to permit a rational factfinder to conclude that there was a nondiscriminatory reason for the challenged employment action, thereby displacing the presumption of intentional discrimination generated by the prima facie case. *Byrd*, 61 F.3d 1026, 1031; *Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1091 (1st Cir.1995).

■ Then, at the third and final stage in the *McDonnell Douglas* analysis, the employee, who has the ultimate burden of persuasion throughout, must present "sufficient admissible evidence, if believed, to prove by a preponderance of the evidence each element in a prima facie case and that the employer's justification for the challenged employment action was merely a pretext for impermissible ... discrimination." *Byrd*, 61 F.3d at 1026; *Woodman*, 51 F.3d at 1092.

■ The district court found that appellant made the requisite prima facie case, and that the employer carried its second stage burden of production. Ultimately, the district court ruled that defendant-appellees presented persuasive evidence that appellant was discharged for permissible reasons, and so appellant could not prove pretext by a preponderance of the evidence. Appellant's sole argument on appeal is that the district court erred in finding that defendant-appellees had proved by a preponderance of the evidence her contract would not have been renewed absent her protected conduct. Under review for clear error, with respect to appellant's § 1983 claim, we have already upheld the district court's finding under *Mt. Healthy* that, by a preponderance of the

---

4. The Maine Whistleblowers' Protection Act provides that an employer may not discriminate against any employee, among other reasons, because:

    The employee, acting in good faith ... reports orally or in writing to the employer or a public body what the employee has cause to believe is a violation of a law or rule adopted under the laws of this State, a political subdivision of this State or the United States.

26 M.R.S.A. § 833(1)(A).

evidence, defendant-appellees would have made the same decision in the absence of her protected conduct. In accord with that finding under the same facts, the same standard of review and the same evidentiary standard, we reject appellant's argument under the *McDonnell Douglas* framework for the same reasons as under the *Mt. Healthy* analysis.

### C. Intentional Infliction of Emotional Distress

To prevail on a claim for intentional infliction of emotion distress, appellant must show that (1) appellees acted intentionally or recklessly or were substantially certain that severe emotional distress would result from their conduct; (2) appellees' conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community; (3) appellees' conduct caused appellant emotional distress; and (4) the emotional distress suffered by appellant was so severe that no reasonable person could be expected to endure it. *Gray v. State*, 624 A.2d 479, 484 (Me.1993).

The district court denied this claim on the grounds that Mowles' reasoned process of decision making could not be characterized as the requisite extreme and outrageous conduct. Without citation to Maine authority, appellant argues that the district court erred by assuming that Mowles' decision not to renew Wytrwal's contract was the correct factual predicate for the intentional infliction of emotional distress claim. Instead, appellant contends, as a matter of law, that the district court's finding that her protected free speech was a motivating factor under *Mt. Healthy* in the employment decision in and of itself compels a finding of extreme and outrageous conduct, and that any argument that appellees would have made the same decision for permissible reasons is irrelevant. We reject this argument. Maine case law defines "extreme" and "outrageous" conduct as behavior that exceeds "all possible bounds of decency" and which must be regarded as "atrocious, and utterly intolerable in a civilized community." *Gerber v. Peters*, 584 A.2d 605, 608 (Me.1990), *cited in Gray*, 624 A.2d at 484. Given Maine's

endorsement of a standard rooted in community standards of conduct, and *Mt. Healthy*'s logically consistent balancing of individual constitutional rights against society's interest in the efficient delivery of state services, we cannot agree with appellant that we must ignore appellees' arguments under the *Mt. Healthy* burden shifting analysis in weighing the outrageousness of appellees' conduct. Thus, with respect to appellant's argument that conduct antagonistic to her exercise of her constitutional rights is intolerable in a civilized community, we conclude that the balance of societal interests, including the harm of undeserved tenure for teachers, militates against such a finding. Having found that appellant cannot carry her burden under the second prong of the Maine tort of intentional infliction of emotional distress, we need not reach the other three prongs.

### IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is *affirmed*. Costs to appellees.