Burrell, Jr. v. University of Maine     CV-00-114-M     07/25/00
UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


William L. Burrell, Jr,
    Plaintiff

    v.                                    N.H. Civil No. 00-114-M
                                         Me. Civil No. 99-107-PC
                                         Opinion No. 2000 DNH 162
Board of Trustees of the
University of Maine System, et al.,
    Defendants


**O R D E R**


    William Burrell, Jr. brings action seeking compensatory and punitive damages, as well as injunctive relief, for alleged violations of various federally protected rights.  He also raises several claims under Maine common and statutory law, as to which he invokes the court's supplemental jurisdiction.  Following recusal of the judges of the United States District Court for the District of Maine, the undersigned was designated to hear the matter.

Presently pending is the Report and Recommendation of United States Magistrate Judge Margaret Kravchuk, recommending that the court: (1) grant Burrell's motion to amend his complaint (document no. 32); (2) grant defendants' motions to dismiss all of Burrell's federal claims; and (3) decline to exercise supplemental jurisdiction over his state law claims. As to the Magistrate Judge's recommendation that the court dismiss his complaint, Burrell objects.

Pursuant to 28 U.S.C. §636(b)(1), the court reviews de novo those portions of the report and recommendation to which a party has filed timely and specific objections. See also Fed. R. Civ. P. 72(b) ("Within 10 days after being served with a copy of the recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations."). There being no objection to the Magistrate Judge's recommendation that Burrell be allowed to amend his complaint, that recommendation is accepted.

2

## Background

Burrell filed this action after he was dismissed from his work-study position at Student Legal Services at the University of Southern Maine ("USM"), following the USM Student Senate's conclusion that he had misrepresented his position and authority. The factual details of his complaint are summarized in the Report and Recommendation, and need not be repeated.

Generally speaking, Burrell's amended complaint alleges that he was denied due process in the proceeding before the Student Senate that resulted in the decision to terminate his employment, claiming that he was not afforded an opportunity to "confront or cross examine his accusers." Amended complaint, para. 83. Burrell also claims to have been the victim of unlawful racial discrimination, and says that various defendants violated 42 U.S.C. § 1981, Title VII, the Whistleblower's Protection Act, the Maine Human Rights Act, Maine's Freedom of Access Law, and Title VI. Finally, he also brings claims for breach of contract,

intentional and negligent infliction of emotional distress, and defamation.

## Discussion

Burrell's amended complaint is a lengthy and somewhat rambling account of a complex and wide-ranging conspiracy among defendants to deprive him of numerous federally protected rights. Often, the precise nature of his claims is unclear. And, unfortunately, his objection to the Report and Recommendation is no more illuminating, consisting largely of an unfocused attack on the Magistrate Judge's construction of his claims and her interpretation of what often appear to be minor and non-dispositive facts underlying those claims. See e.g., Plaintiff's objection at 4 (discussing his view that the Magistrate Judge erroneously construed his disputes with students at Student Legal Services as arising out of the "client intake process," when Burrell says his claims relate to "much more than the client intake process").

4

Perhaps more fundamentally, Burrell seems to be confused as to which of his proposed amended complaints has been accepted by the court and which have been stricken (the Report and Recommendation discusses in some detail Burrell's efforts to amend his complaint). See, e.g., Plaintiff's objection at 9 ("none of the Defendants' cases can stand against the Plaintiff's cases, and Plaintiff's two latest amended versions [of his complaint] clearly state a claim.") (emphasis supplied). Consequently, Burrell argues:

> Plaintiff was ordered (without being granted leave to file another motion to amend) to submit a shorter version of his complaint. It is this Plaintiff's contention that since he was not granted leave to file another motion to amend that the latest motion to amend should be in support of both of plaintiff's amended versions. This only seems fair considering plaintiff's pro se status. . . . Does this Court read facts that are sufficient to state the Plaintiff's claims in one complaint, ask him to submit a shorter version, and pretend the previous facts were never stated? This is only a motion to dismiss and this Plaintiff contends that at this early stage this Honorable Court should take into consideration everything this Pro Se Plaintiff has said in the entire pre-trial record to ascertain[] what the Plaintiff is really trying to say.

Plaintiff's objection at 3 (emphasis in original). Just so there is no confusion on this point, the court notes that only the amended complaint filed on November 29, 1999, is relevant; Burrell's numerous other proposed amended complaints were stricken by order dated November 12, 1999.

Notwithstanding some of the confusion arising from Burrell's objection to the Report and Recommendation, it is clear the he disputes nearly every legal conclusion reached by the Magistrate Judge. He has, however, failed to provide much support for those objections. For example, at one point Burrell simply says, "Plaintiff objects to the entire recommendation of the Magistrate Judge from this point on, but further points out some glaring oversights." Plaintiff's objection at 9. Such a generalized objection is not very helpful. Nevertheless, because of Burrell's pro se status, the court has tried, where possible, to identify and address his specific legal challenges to the Report and Recommendation.

Viewing both his amended complaint and objection to the Report and Recommendation liberally, the court discerns three specific challenges. First, Burrell objects to the Magistrate Judge's construction and disposition of his due process claims against the Board of Trustees of the University of Maine System (the "University Defendants"). Next, Burrell challenges the recommendation that the court dismiss his First Amendment claims. Finally, he asserts that the Magistrate Judge improperly recommended dismissal of his § 1983 claims against defendants Kaestner and Finlayson (saying the Magistrate Judge erroneously concluded that his amended complaint fails to allege that those defendants acted under color of state law).

I.    Plaintiff's Due Process Claim and the University Defendants.

Invoking the provisions of 42 U.S.C. § 1983, Burrell seeks compensatory and injunctive relief against the University Defendants, alleging, among other things, that he was fired from a work-study position in Student Legal Services without due process. Giving Burrell the benefit of the doubt, the Magistrate

7

Judge assumed that his amended complaint adequately alleged that he had a protected property interest in his work-study position under Maine law.  See Report and Recommendation at 13-14.  She then concluded, however, that Burrell had been afforded all the process he was due.  See Id. at 14-15.

The Supreme Court has observed that, "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law.  The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process."  Zinermon v. Burch, 494 U.S. 113, 125 (1990) (citation and internal quotation marks omitted).  Accordingly, in assessing the validity of any procedural due process claim, a court must engage in a two-step inquiry.

8

> We first decide whether the asserted individual interests are encompassed within the Fourteenth Amendment's protection of "life, liberty, or property." If protected interests are implicated, we then must decide what procedures constitute "due process of law." Protected [property] interests may arise from two sources - the Due Process Clause itself and the laws of the states.

Brown v. Hot, Sexy and Safer Productions, Inc., 68 F.3d 525, 534-35 (1st Cir. 1995).

Here, Burrell does not appear to claim that the manner in which defendants decided to terminate his employment violated any state or federal statutory provisions. Instead, his procedural due process claim appears to emanate exclusively from the Due Process Clause of the Fourteenth Amendment. Consequently (again, assuming he had a property interest in his job), Burrell "was entitled to the constitutional minimum of 'some kind of hearing' and 'some pretermination opportunity to respond.'" O'Neill v. Baker, 210 F.3d 41, 47-48 (1st Cir. 2000) (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985)).

9

Notwithstanding Burrell's contrary assertions, his amended complaint makes clear that he received all the process to which he was constitutionally entitled. Burrell was suspended based upon five charges leveled against him, each of which was explained to him in a letter. See Amended complaint at paras. 60-61. Burrell complained to the Student Senate about his suspension, and the Senate ordered an investigation into the matter. Id., at para. 71. Subsequently, the Student Senate Ad-hoc Investigative Committee (SSAIC) cleared Burrell of four of the charges against him, but found him guilty of the fifth (misrepresentation of his position and authority). Id., at paras. 77-78. Burrell was subsequently fired. Id., at para. 81.

Burrell says he repeatedly sought a post-deprivation hearing, which was eventually offered to him approximately seven months later. Id., at para. 83. But, when he learned that he would not be permitted to cross-examine any witnesses, Burrell elected not to participate. In light of Burrell's refusal to participate, it appears that no hearing was ever conducted. That

issue is, however, unclear from Burrell's pleadings.  Compare,
Plaintiff's objection at 5 (alleging that no post-deprivation
hearing ever took place) with amended complaint at para. 87
("Despite the fact that Hill knew in the very beginning of
February 1999 that Burrell wanted the process halted, Hill
nevertheless . . . went ahead with the process") (emphasis in
original).

Parenthetically, the court notes that Burrell takes great
pains to distinguish between the "process" he claims to have been
denied, and the post-termination "hearing" he apparently declined
to attend.  The precise distinction Burrell is attempting to draw
is, however, unclear.

> Plaintiff is **NOT** talking about a **HEARING** when he uses
> the word **PROCESS**!  The PROCESS that this Plaintiff is
> referring to is Mr. Hill notifying the Senate in
> writing of the charges against them, meeting with both
> sides to discuss procedure, setting a date for hearing,
> etc.  Initiating a hearing/proceeding is a far
> different matter.  Note the differences in the
> Magistrate Judge's terminology and the plaintiff's:
> **"Hill did not initiate a hearing until seven months
> after plaintiff requested one."** (Report and

11

Recommendation at 9), compare to "**83. Mr. Hill ignored Burrell's pleas for a post-deprivation hearing for more than SEVEN MONTHS.** When Mr. Hill finally got around to **setting a date for a hearing,** he reaffirmed for Burrell that he would not be entitled to confront or cross examine his accusers." (plntfs amend. complt. at 83).

Plaintiff's objection at 5 (emphasis in original). Needless to say, neither the nature of Burrell's due process claim, nor his objection to the Report and Recommendation, is very clear. Notwithstanding that confusion, however, it appears that the Magistrate Judge reasonably and plausibly construed Burrell's effort.

Even assuming (as Burrell alleges in his objection) that no post-deprivation hearing was conducted, the amended complaint makes clear that it was because Burrell objected and refused to participate. See Amended complaint at para. 86. In light of the foregoing, the court agrees with the Magistrate Judge's conclusion that Burrell was afforded all the process to which he was entitled: (1) he was notified of the charges pending against him; (2) prior to his termination, Burrell disputed those charges

12

before the Student Senate; (3) an investigation into those charges was conducted; (4) that investigation uncovered evidence that Burrell had misrepresented his position and authority; (5) The SSAIC found him guilty of that particular charge and, accordingly, his employment was terminated; and (6) he was offered (but refused to participate in) a post-deprivation hearing. Although it is unclear what additional process Burrell believes he was entitled to, it is clear that he was afforded all the process to which he was entitled under the Constitution. Consequently, Burrell's procedural due process claim fails as a matter of law. See Report and Recommendation at 14-15.

## II. Burrell's First Amendment Claim.

With regard to Burrell's § 1983 First Amendment claim, the Magistrate Judge concluded that his amended complaint fails "to state a claim under the First Amendment because he has failed to allege sufficient facts to support his conclusory assertion that his complaints were a motivating factor behind his dismissal." Report and Recommendation at 12 n.1. Burrell objects, but fails

13

to point to any specific references in his amended complaint that might refute the Magistrate Judge's conclusion. Instead, he simply says that the Magistrate Judge "offers absolutely no elaboration as to why she feels Plaintiff has failed to allege sufficient facts nor does she point to one example in Plaintiff's complaint that is a conclusory assertion used to support a First Amendment claims." Plaintiff's objection at 6.

A. First Amendment Claims Against the University Defendants.

Assuming that Burrell's work-study position at Student Legal Services makes him a "public employee," to state a viable claim under the First Amendment for unlawful retaliatory discharge, he must allege: (1) that he was speaking on matters of public concern; (2) that his and the public's interest in free discourse on those matters outweighed the countervailing government interest in promoting the efficient performance of public service; and (3) that his expression was a motivating or substantial factor in the decision to terminate his employment. See Padilla-Garcia v. Rodriguez, __ F.3d __, 2000 WL 562309 (1st

14

Cir. May 15, 2000); <u>Wytrwal v. Saco School Bd.</u>, 70 F.3d 165, 170 (1st Cir. 1995). Even liberally construing Burrell's amended complaint, the court concludes that Burrell has failed to adequately plead a viable First Amendment claim.

To be sure, Burrell's amended complaint alleges that he complained about certain issues related to Student Legal Services. <u>See</u> Amended complaint at paras. 41 and 51. His amended complaint also alleges that he was suspended in retaliation for having engaged in that conduct. <u>See</u> Amended complaint at paras. 63 and 70. Notwithstanding those allegations, Burrell's amended complaint still falls short of the mark. First, there are several factual problems with Burrell's claim. For example, he acknowledges that the 27th U.S.M. Student Senate "was not aware of the dispute in Student Legal Services (SLS) which the 26th U.S.M. Student Senate had been dealing with." Amended complaint at para. 57. Consequently, it is difficult to see how the 27th Senate could have "retaliated"

15

against Burrell if it was unaware of his prior protected speech (in the form of his complaints).

Burrell's amended complaint also acknowledges that the 27th Student Senate rescinded his suspension, restored his weekly salary, and ordered an immediate investigation into the matter. See Amended complaint at paras. 71 and 74. Following that investigation, Burrell was found "guilty of the fifth charge" lodged against him: misrepresenting his position and authority. See Amended complaint at para. 78. While Burrell alleges that his termination was the product of some sort of conspiratorial agreement among many of the defendants, he does not claim that it (as distinguished from his earlier suspension) was motivated by his having engaged in protected speech. See Amended complaint at paras. 78 and 81. Thus, while the amended complaint (charitably construed) alleges that the initial investigation into Burrell's conduct was motivated, at least in part, by an unlawful effort to retaliate against him for having engaged in protected speech, it also makes clear that he was terminated (i.e., an adverse

16

employment action was taken against him) only after it was found that he misrepresented his position and authority within Student Legal Services.

The amended complaint suffers from additional shortcomings as it relates to Burrell's First Amendment claim. First, it is well established that a governmental entity cannot be held liable under 42 U.S.C. § 1983 on a theory of respondeat superior or vicarious liability; the governmental entity itself must proximately cause the constitutional injury, through the promulgation (or tacit approval) of a policy or custom. See City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989). See generally Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978). And, to state a viable claim under § 1983, a plaintiff must allege in substance that the challenged governmental custom or policy was the "moving force" behind the constitutional injuries at issue. See Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 404 (1997).

Accordingly, in order to hold the Board of Trustees liable, Burrell must allege that his unlawful termination for having engaged in protected speech was the product of some custom or policy adopted or implemented by the Board. The amended complaint simply fails to make any such allegations, other than periodic vague references to a policy of "failure to train." However, Burrell's amended complaint fails to link that alleged policy to his wrongful termination for having engaged in protected speech. See, e.g., Amended complaint at para. 121.

Finally, Burrell's amended complaint fails to specifically identify which defendants allegedly violated his First Amendment rights and/or how they accomplished that task. Instead, it generally describes certain actions taken by various defendants and then merely declares that all are somehow liable to him under § 1983. Plainly, more specificity in identifying the allegedly wrongful conduct by each named defendant is necessary.

18

Having conducted a de novo review of the record, see 28 U.S.C. § 636(b)(1), the court agrees with the Magistrate Judge's conclusion that Burrell's amended complaint fails to state a viable First Amendment § 1983 claim for retaliatory discharge.

B.    Plaintiff's Remaining First Amendment Claims.

Burrell describes his First Amendment claim against defendants Ryan, Monroe, and Stanhope as follows:

> Defendants Ryan, Monroe, and University of Southern Maine Police Officer, James, Stanhope, conspired to defame and file a false cease harassment notice against Mr. Burrell.  This deprived Burrell of his rights under 42 U.S.C. § 1983, specifically the 1st Amendment . . ."

Amended complaint at para. 125.  While Burrell alleges that the "cease harassment notice" was filed "in retaliation to Burrell's initial complaints concerning discrimination," amended complaint at para. 126, he does not claim that it had any impact upon the decision to terminate his employment.  In fact, it appears that Burrell was served with the notice well after his termination.  See Amended complaint at para. 101.  Plainly, therefore,

19

Burrell's claim against defendants Ryan, Monroe, and Stanhope is unrelated to his retaliatory discharge claim discussed above.

To state a viable § 1983 claim against Ryan, Monroe, and Stanhope under 42 U.S.C. § 1983, Burrell must allege that: (1) defendants acted under color of state law; and (2) their conduct deprived Burrell of a right secured by the Constitution or a federal statute.  See West v. Atkins, 487 U.S. 42, 48 (1988). And, typically, in order to show that a deprivation of a First Amendment right has occurred, a plaintiff must, at a minimum, demonstrate that the defendant intended to inhibit speech protected by the First Amendment, Tatro v. Kervin, 41 F.3d 9, 18 (1st Cir. 1994), and that the defendant's conduct had a chilling effect on the protected speech that was more than merely "speculative, indirect, or too remote." Sullivan v. Carrick, 888 F.2d 1, 4, (1st Cir. 1989).

Even charitably construing Burrell's amended complaint, it appears that his claims against defendants Stanhope, Ryan, and

20

Monroe are nothing more than common law claims for defamation. Among other things, the amended complaint is devoid of any allegations that those defendants sought to stifle Burrell's constitutionally protected speech or that their allegedly wrongful conduct actually chilled Burrell's speech. In short, Burrell's amended complaint fails to articulate a viable § 1983 First Amendment claim against any of those defendants.

III. <u>Defamation and Defendants Kaestner and Finlayson</u>.

Finally, Burrell challenges the Magistrate Judge's recommendation that the court dismiss what Burrell has cast as § 1983 claims against defendants Kaestner and Finlayson. In his amended complaint, Burrell alleges:

> Jean S. Kaestner, <u>who is now material to this action concerning the charge of defamation only</u>, as it applies to state tort law and Due Process violations, was a duly appointed, employed, and acting Family Services Coordinator for Freeport Community Services and Coastal Economic Development's Head Start Centers at Freeport and Brunswick.
>
> Elizabeth R. Finlayson, <u>who is now material to this action concerning the charge of defamation only</u>, as it applies to state tort law and Due Process violations,

21

> was a duly appointed, employed, and acting Executive
> Director of Freeport Community Services.

Amended complaint at paras. 19-20 (emphasis supplied).  As to

those defendants, Burrell alleges:

> Jean Kaestner and Elizabeth Finlayson, officially and
> individually, under color of State Law, <u>conspired
> together to defame William Burrell by writing false,
> defamatory letters to his supervisors</u>, as stated above.
> Said defamation caused Burrell great injury in the form
> of the loss of his job, a Government benefit in which
> he has both a Property and Liberty interest.  Kaestner
> and Finlayson's defamatory comments deprived Burrell of
> substantive and procedural Due Process Rights.

<u>Id.</u>, at para. 124 (emphasis supplied).  The content of the

letters attributed to Kaestner and Finlayson, described in

paragraphs 89 through 94 of Burrell's amended complaint, need not

be detailed.  It is sufficient to note that both defendants

allegedly complained about the deceptive manner in which Burrell

sought to obtain confidential information apparently maintained

by their employers.

22

Burrell's § 1983 claim against these defendants suffers from several shortcomings. First, notwithstanding his conclusory allegation that defendants acted under color of state law, it is entirely unclear from the amended complaint whether Freeport Community Services (Finlayson's employer) or Coastal Economic Development's Head Start Centers (Kaestner's employer) are state (or municipal) entities or whether they are private organizations. Accordingly, it is unclear whether Kaestner or Finlayson could have been acting "under color of state law" when they lodged complaints against Burrell. Moreover, even assuming that Kaestner and Finlayson were acting under color of state law, Burrell's claim that they defamed him fails to state a cause of action under 42 U.S.C. § 1983. Instead, it appears to be, at best, a rather straight-forward common law claim for defamation.

23

## Conclusion

Pursuant to 28 U.S.C. § 636(b)(1), the court has made a de novo determination of those portions of the Report and Recommendation to which plaintiff has objected.  For the foregoing reasons, the court accepts and adopts the Report and Recommendation prepared by the Magistrate Judge, dated February 1, 2000 (N.H. docket no. 4; Me. docket no. 49), for the reasons given by the Magistrate Judge and as supplemented by this order.

Burrell's amended complaint does not represent his first effort to set forth viable (and comprehensible) claims against defendants.  Due, no doubt, in large part to his pro se status, the United States District Court for the District of Maine has afforded him substantial latitude.  By May of 1999, Burrell had filed his original complaint as well as an amended complaint (Me. docket nos. 1 and 5).  In response, defendants filed motions to dismiss.  On June 3, 1999, and then again on August 10, Burrell sought to further amend his complaint by adding new defendants

24

and at least three new causes of action (Me. docket nos. 13 and 27).

Burrell's efforts to amend his complaint continued. On August 17, 1999, he again sought to amend his complaint "to attach additional causes of action to his Amended [Complaint] Copy #3" (Me. docket no. 28). Notwithstanding the fact that he had submitted literally hundreds of pages of filings, to that point, Burrell still had not settled upon the final form of his complaint, the nature of the claims he was bringing, or even the defendants against whom he was proceeding (in fact, in the most recent version of his amended complaint, which is currently before the court, Burrell seeks to add seven additional defendants).

In response to Burrell's efforts in August, the District Court wrote, "The Court is sympathetic to the difficulties faced by pro se litigants, but Defendants are also entitled to an answer on their Motions to Dismiss. Plaintiff cannot continue

25

reformulating his claims, creating more work for Defendants'

counsel, and delaying action on those Motions interminably."

Order dated August 18, 1999 (Me. docket no. 29) at 2.

Accordingly, the court struck Burrell's most recent proposed

amended complaint and granted him "leave to file one Motion for

Leave to Amend Complaint, together with a copy of the proposed

Amended Complaint in its entirety."  Id.


On September 7, 1999, Burrell complied with the court's

order and filed a motion and proposed amended complaint.  After

reviewing that submission, the District Court observed:


> The [Amended] Complaint is a single-and-a-half spaced
> document that is forty-seven pages long.  The [Amended]
> Complaint also contains numerous portions of documents
> (reproduced in very small print), and individual
> allegations that run for an entire page.  Defendants
> filed an objection to the amended Complaint stating
> that the "allegations in the proposed Amended Complaint
> are now so prolix that it is often impossible to
> determine how the allegations relate in any way to his
> claims for relief."  On this the Court agrees.


Order dated November 12, 1999 (Me. docket no. 36).  Additionally,

acknowledging defendants' difficulty in discerning the precise

26

nature of Burrell's claims, the court concluded that the proposed amended complaint did not comply with Fed. R. Civ. P. 8(a) in that it failed to contain a short and plain statement of his claim(s). It noted that, "A review of the [Amended] Complaint reveals that it is argumentative, contains excessive verbiage, and pleads evidence, all of which imposes an unnecessary burden on Defendants in properly responding to [it]." Id. Accordingly, the court struck Burrell's fifth proposed amended complaint and afforded him one last opportunity to file a succinct and comprehensible proposed amended complaint.

The result is the amended complaint presently before the court, representing Burrell's sixth attempt to state his claims with clarity and precision. As noted above, its factual allegations and 14 counts detail what Burrell perceives to have been a wide-ranging conspiracy to discriminate against him, deprive him of numerous federally protected rights, inflict emotional and economic ruin upon him, and expose him to public ridicule by revealing confidential information to the media.

27

Unfortunately, like its predecessors, the amended complaint is, at best, marginally comprehensible and, more importantly, fails to set forth the essential elements of any viable federal claims.

Based upon his court filings to date, Burrell gives every indication that he is capable of reading and understanding relevant statutes and judicial opinions. While the task is, no doubt, a difficult one for someone untrained in the law, by now he should have been able to draft a complaint that clearly and succinctly identifies viable causes of action against specific defendants and includes allegations pertinent to each of the essential elements of those claims. He has failed to do so. And, notwithstanding his pro se status, the court cannot invent necessary factual allegations where none exist, nor can it act as Burrell's counsel and redraft his amended complaint so that it states viable causes of action.

Having made a de novo determination of those portions of the Report and Recommendation to which Burrell has objected, the

court concludes that the recommended disposition of Burrell's claims is legally correct. Accordingly, the court accepts and adopts the Magistrate Judge's Report and Recommendation (Me. docket no. 49; N.H. docket no. 4). Defendants' motions to dismiss (Me. docket nos. 40, 41, and 42) are, therefore, granted. Burrell's federal claims are dismissed, without prejudice, for failure to state a claim. As to his state law claims, the court declines to exercise its supplemental jurisdiction and they too are dismissed, without prejudice. See 28 U.S.C. 1367(c)(3). The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

July 25, 2000

cc: William L. Burrell, Jr.
    Patricia A. Peard, Esq.
    Peter E. Rodway
    Philip M. Coffin, III, Esq.
    William S. Brownell, Clerk